# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

| | |
|---|---|
| KENNETH CUNNINGHAM,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>PRAIRIE FARMS DAIRY, INC. and EAST SIDE JERSEY DAIRY, INC.,<br><br>　　　　Defendants. | No. C19-1022-LTS<br><br>**ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

## I.　INTRODUCTION

This case is before me on a motion (Doc. 39) for summary judgment by defendants Prairie Farms Dairy, Inc., and East Side Jersey Dairy, Inc.[1] Plaintiff Kenneth Cunningham has filed a resistance (Doc. 42) and defendants have filed a reply (Doc. 44). I find that oral argument is not necessary. *See* Local Rule 7(c).

## II.　PROCEDURAL HISTORY

Cunningham filed a petition in the Iowa District Court for Dubuque County on July 10, 2019, asserting three claims:

Count I – Disability discrimination and retaliation under the Iowa Civil Rights Act (ICRA),

Count II – Race discrimination, harassment and retaliation under the ICRA, and

---

[1] Defendants filed an initial motion for summary judgment (Doc. 33) and plaintiff filed an initial resistance (Doc. 36). The parties then filed a joint motion (Doc. 37) to amend their summary judgment filings to bring them into compliance with this court's rules. After that joint motion was granted (Doc. 38), defendants filed their present, amended motion (Doc. 39) and plaintiff filed his amended resistance (Doc. 41).

> Count III – Failure to accommodate and retaliation under the Americans with Disabilities Act (ADA).

Doc. 3. On August 30, 2019, defendants removed the case to this court, invoking the court's federal question jurisdiction based on the ADA claims, along with supplemental jurisdiction over the ICRA claims. Doc. 1 at 2. Trial is currently scheduled for March 22, 2021.

## III. SUMMARY JUDGMENT STANDARDS

Any party may move for summary judgment regarding all or any part of the claims asserted in a case. Fed. R. Civ. P. 56(a). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A material fact is one that "'might affect the outcome of the suit under the governing law.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, "the substantive law will identify which facts are material." *Id.* Facts that are "critical" under the substantive law are material, while facts that are "irrelevant or unnecessary" are not. *Id.*

An issue of material fact is genuine if it has a real basis in the record, *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)), or when "'a reasonable jury could return a verdict for the nonmoving party' on the question." *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) (quoting *Anderson*, 477 U.S. at 248). Evidence that only provides "some metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at 586, or evidence that is "merely colorable" or "not significantly probative," *Anderson*, 477 U.S. at 249–50, does not make an issue of material fact genuine.

2

As such, a genuine issue of material fact requires "sufficient evidence supporting the claimed factual dispute" so as to "require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 248–49. The party moving for entry of summary judgment bears "the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." *Hartnagel*, 953 F.2d at 395 (citing *Celotex*, 477 U.S. at 323). Once the moving party has met this burden, the nonmoving party must go beyond the pleadings and by depositions, affidavits, or otherwise, designate specific facts showing that there is a genuine issue for trial. *Mosley v. City of Northwoods*, 415 F.3d 908, 910 (8th Cir. 2005). The nonmovant must show an alleged issue of fact is genuine and material as it relates to the substantive law. If a party fails to make a sufficient showing of an essential element of a claim or defense with respect to which that party has the burden of proof, then the opposing party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 322.

In determining if a genuine issue of material fact is present, I must view the evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587–88. Further, I must give the nonmoving party the benefit of all reasonable inferences that can be drawn from the facts. *Id.* However, "because we view the facts in the light most favorable to the nonmoving party, we do not weigh the evidence or attempt to determine the credibility of the witnesses." *Kammueller v. Loomis, Fargo & Co.*, 383 F.3d 779, 784 (8th Cir. 2004). Instead, "the court's function is to determine whether a dispute about a material fact is genuine." *Quick v. Donaldson Co., Inc.*, 90 F.3d 1372, 1376–77 (8th Cir. 1996).[2]

---

[2] Cunningham claims "Summary Judgment is an extreme remedy and should not be granted unless the moving party has established the right to a judgment with "such clarity as to leave no room for controversy and that the other party is not entitled to recover under any discernable circumstances." Doc. 41 at 7. This is no longer an accurate statement. The Supreme Court explained, quite some time ago, that "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole,

## IV. RELEVANT FACTS

Unless otherwise noted, the following facts are not in dispute:

Cunningham is an African-American male who suffers from diabetes. Doc. 3 at 2. He began working for Prairie Farms Dairy in 2009. Doc. 44-1 at 1. Before that, he was employed by Prairie Farms Dairy's predecessor, Swiss Valley, for approximately four years. *Id.*

Cunningham claims he was subjected to racial epithets and harassment by coworkers. *Id.* at 1–4. One coworker regularly referred to Cunningham as "Black Kenny." *Id.* at 1–2. Once, after Cunningham returned to work from a diabetes-related toe amputation, a coworker made a "joke" about Cunningham's amputated toe being a "nigger toe," which is apparently a vulgar term used for a Brazil nut in a bowl of mixed nuts.[3] *Id.* at 2–3; Doc. 39-2 at 6. On another occasion, a coworker called Cunningham a "nigger" as Cunningham was walking away.[4] Doc. 44-1 at 3–4. Whether Cunningham

---

which are designed to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quotation and citation omitted). Moreover, while some federal courts previously applied a heightened summary judgment standard to discrimination claims, the Eighth Circuit Court of Appeals rejected that practice in 2011:

> Because summary judgment is not disfavored and is designed for "every action," panel statements to the contrary are unauthorized and should not be followed. There is no "discrimination case exception" to the application of summary judgment, which is a useful pretrial tool to determine whether any case, including one alleging discrimination, merits a trial.

*Torgerson v. City of Rochester*, 643 F.3d 1031, 1043 (8th Cir. 2011) (en banc).

[3] There is a discrepancy in the record as to which coworker made this comment. In deposition testimony, Cunningham stated that Josh Potter, the same coworker who called him "Black Kenny," made the "nigger toe" comment. Doc. 39-3 at 103–05. But in an affidavit supporting his statement of material facts, Cunningham stated that another coworker, Josh Bartels, made the comment. Doc. 42-1 at 4. Although Cunningham does not explain this inconsistency, defendants do not deny that one of his coworkers made this comment. Doc. 44-1 at 2–3.

[4] As with the "nigger toe" comment, there is a discrepancy between Cunningham's deposition testimony and affidavit as to which coworker called him a "nigger." However, defendants do

4

reported these incidents to supervisors is disputed, but it is undisputed that supervisors heard Cunningham referred to as "Black Kenny," at least one time, and also heard the "nigger toe" comment. *Id.* at 2–3.

Cunningham's employment was also complicated to some extent by his diabetes. He became lightheaded several times at work and usually managed these diabetic episodes by taking breaks or drinking juice or milk while working. Doc. 42-1 at 5. However, at some point in 2017 Prairie Farms Dairy changed its policies to prohibit eating or drinking on its assembly floor. Doc. 44-1 at 6–7. On three occasions when Cunningham had diabetic episodes after the policy change, Prairie Farms Dairy called an ambulance to take Cunningham to the emergency room. *Id.* Cunningham believed such actions were unnecessary but complied. *Id.* At the end of the final episode during which an ambulance was called, the doctor treating Cunningham allegedly told him that if he had one more serious diabetic episode, she would recommend that Prairie Farms Dairy release him because he was a liability to the company. *Id.* at 7. The parties disagree as to whether evidence of that doctor's statement is admissible. *Id.*

On October 13, 2018, Cunningham left work to get medicine from a nearby convenience store while there was no product on the floor. *Id.* at 8–10; Doc. 42-1 at 85. He left without approval and was gone for six minutes. Doc. 44-1 at 9–10; Doc. 39-2 at 1. He did not clock out before leaving, even though he knew employees were required to do so. Doc. 44-1 at 9–10; Doc. 39-2 at 2. After returning from the convenience store, no one spoke to him about leaving. Doc. 44-1 at 10. Nor did anyone speak with him regarding the incident as he continued his normal work schedule over the next several days. *Id.*

However, on October 19, 2018, Cunningham was fired, allegedly for job abandonment and time theft. Doc. 39-2 at 1. He filed a grievance with his union but

---

not deny that Cunningham claims a coworker called him a "nigger" on at least one occasion. Doc. 39-2 at 6.

5

ultimately dropped it after learning that he would not get his job back. Doc. 44-1 at 1. He argues that Prairie Farms Dairy's stated reasons for firing him are pretext and that he was actually discharged due to his race and diabetes.

Other relevant facts will be discussed below as necessary.

## V. DISCUSSION

Defendants argue that Cunningham failed to exhaust his administrative remedies with regard to many of his claims. Specifically, they contend that Cunningham failed to properly raise his racial harassment, retaliation and failure to accommodate claims in his administrative complaint. Defendants also argue that Cunningham (1) failed to establish a prima facie case of discrimination as to any of his claims and, in any event, (2) those claims cannot survive summary judgment because he cannot show that their reason for terminating his employment was pretext for discrimination. I will address these issues in turn.

### A.  *Failure to Exhaust*

Because anti-discrimination statutes, such as Title VII and the ICRA, establish elaborate administrative procedures designed to aid in the investigation and resolution of discrimination claims, plaintiffs are generally required to exhaust all administrative remedies before bringing their claims in court. *Shannon v. Ford Motor Co.*, 72 F.3d 678, 684 (8th Cir. 1996). To do so, a plaintiff must timely file a charge of discrimination and receive a right-to-sue letter from the appropriate administrative agency. *Faibish v. Univ. of Minn.*, 304 F.3d 797, 803 (8th Cir. 2002). With regard to the ICRA, Iowa courts generally follow federal law on the matter of exhaustion. *See McElroy v. State*, 703 N.W.2d 385, 391 (Iowa 2005); *see also Hedlund v. State*, 930 N.W.2d 707, 719 (Iowa 2019), *as amended* (Sept. 10, 2019) ("[W]e 'look[ ] to the corresponding federal statutes to help establish the framework to analyze claims and otherwise apply [the ICRA].'" (second alteration in original) (quoting *Casey's Gen. Stores, Inc. v. Blackford*,

661 N.W.2d 515, 519 (Iowa 2003))).

Defendants argue that Cunningham has failed to exhaust his administrative remedies in two ways. First, defendants argue that all claims against East Side Jersey Dairy fail because Cunningham did not name it as a defendant in his administrative complaint. Second, they argue that Cunningham failed to properly raise his racial harassment and retaliation claims under the ICRA, and his retaliation and failure to accommodate claims under the ADA, because he did not include them in his administrative complaint.

### 1. *Failure to Name a Defendant*

Generally, plaintiffs must name all defendants in their administrative complaint in order to bring a subsequent civil suit against them. *See Sedlacek v. Hach*, 752 F.2d 333, 336–37 (8th Cir. 1985). However, courts recognize an exception "when 'substantial identity' exists between the parties" named at the administrative stage and those named in the lawsuit. *Id.* This exception is an acknowledgement that plaintiffs alleging discrimination usually proceed pro se during the administrative stage and "should not be charged with the knowledge of the ofttimes intricate legal corporate relationships between closely held operating units." *Sedlacek*, 752 F.2d at 336. Thus, the question is whether "there is sufficient identity of interest between" those who were and were not named at the administrative stage "to satisfy the intention of Title VII that the defendant have notice of the charge and the EEOC have an opportunity to attempt conciliation." *Greenwood v. Ross*, 778 F.2d 448, 451 (8th Cir. 1985) (quoting *Romero v. Union Pacific R.R.*, 615 F.2d 1303, 1311 (10th Cir. 1980)).

Defendants argue that Cunningham's claims against East Side Jersey Dairy are barred because he listed only Prairie Farms Dairy in his administrative complaint and left other areas for identifying responsible parties blank. As explained above, however, this omission is not determinative. Defendants have made no argument as to whether substantial identity exists between East Side Jersey Dairy and Prairie Farms Dairy.

7

Indeed, other than their acknowledgement that East Side Jersey Dairy is a subsidiary of Prairie Farms Dairy, Docs. 6–7, and a dispute between the parties as to whether East Side Jersey Dairy owned the facility where Cunningham was employed by Prairie Farms Dairy, information about the relationship between the two defendants is absent in the record. Doc. 3 at 2; Doc. 27 at 2. Defendants also have failed to offer any reason to believe that East Side Jersey Dairy lacked notice of Cunningham's administrative action, despite not being named.

Based on the record before me, defendants have failed to meet their burden "of informing the court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." *Hartnagel*, 953 F.2d at 395. Thus, whether Cunningham exhausted his administrative remedies against East Side Jersey Dairy remains a genuine issue in dispute. East Side Jersey Dairy is not entitled to summary judgment on this basis. *See* Fed. R. Civ. P. 56(a).

### 2. *Failure to List a Claim*

A plaintiff's civil complaint does not have to mirror his or her administrative complaint, *see Nichols v. Am. Nat'l Ins. Co.*, 154 F.3d 875, 886 (8th Cir. 1998), but each claim raised must fall within the scope of the allegations made in the administrative complaint. *See Cobb v. Stringer*, 850 F.2d 356, 359 (8th Cir. 1988) ("[T]he sweep of any subsequent judicial complaint may be as broad as the scope of the EEOC 'investigation which could reasonably be expected to grow out of the charge of discrimination.'" (quoting *Griffin v. Carlin*, 755 F.2d 1516, 1522 (11th Cir. 1985))); *see also Williams v. Little Rock Mun. Water Works*, 21 F.3d 218, 223 (8th Cir. 1994) ("Allowing a complaint to encompass allegations outside the ambit of the predicate [administrative complaint] would circumscribe the [administrative agency's] investigatory and conciliatory role, as well as deprive the charged party of notice of the charge, as surely as would an initial failure to file a timely [administrative complaint]." (quoting *Babrocky v. Jewel Food Co. & Retail Meatcutters*, 773 F.2d 857, 863 (7th Cir.

8

1985))).  Thus, administrative remedies are deemed exhausted for all claims that "are like or reasonably related to the substance of charges timely brought before [the administrative agency]." *McElroy*, 703 N.W.2d at 390 (alterations in original) (quoting *Williams*, 21 F.3d at 222).  However, "there is a difference between liberally reading a claim which 'lacks specificity,' and inventing, *ex nihilo*, a claim which simply was not made." *Shannon v. Ford Motor Co.*, 72 F.3d 678, 685 (8th Cir. 1996) (citation omitted).

Cunningham did not list racial harassment, retaliation or failure to accommodate claims in the check-the-box or fill-in-the-blank portions of his administrative complaint. *See* Doc. 39-3 at 130–31.  Indeed, he appears to concede that his administrative complaint failed to raise a failure to accommodate claim.[5]  The parties disagree as to (1) whether Cunningham's allegations in the complaint's narrative section sufficiently raised claims of racial harassment and retaliation and (2) if they did not, whether those claims are reasonably related to the race and disability discrimination claims he raised.  Cunningham

---

[5] In his state court petition, Cunningham asserted that there are no administrative exhaustion requirements for claims under the ADA.  Doc. 3 at 4, ¶ 35.  This is incorrect.  *See* 42 U.S.C. § 12117 (adopting Title VII's administrative procedures, including the administrative complaint process in 42 U.S.C. § 2000e-5, for claims under the ADA); *Schipper v. Tom Hovland Enterprises, Inc.*, No. C 04-3014-MWB, 2005 WL 3480389, at *3 (N.D. Iowa Dec. 20, 2005) ("[W]here a party fails to include a 'failure to accommodate' claim in an administrative charge, even where the party otherwise alleges 'disability discrimination' in the charge, the 'failure to accommodate' claim must be dismissed in a subsequent lawsuit for failure to exhaust administrative remedies, because a 'failure to accommodate' claim is not reasonably related to and does not reasonably grow out of the investigation of a 'disability discrimination' claim.").

In his summary judgment resistance, Cunningham did not address defendants' arguments regarding his failure to exhaust administrative remedies as to his failure to accommodate claim under the ADA.  Doc. 41 at 14-16.  As such, I deem that claim to be abandoned.  In any event, Cunningham did not allege facts in his administrative complaint that could be construed as raising a failure to accommodate claim, nor is such a claim similar to, or reasonably related to, the claims Cunningham did raise in his administrative complaint. *See Weigel v. Target Stores*, 122 F.3d 461, 464 (7th Cir. 1997); *see also Canterbury v. Fed.-Mogul Ignition Co.*, 418 F. Supp. 2d 1112, 1117 (S.D. Iowa 2006) ("It is generally accepted that a failure to accommodate is not like or reasonably related to an allegation of termination.").

9

argues that his allegations of unfair treatment, derogatory comments by coworkers and his managers' failure to take action gave the administrative agency and defendants adequate notice that he intended to raise racial harassment and retaliation claims. Defendants argue that these allegations are relevant only to the inference of discrimination element of Cunningham's discriminatory discharge claims and do not, on their own, raise separate claims of harassment or retaliation.

Contrary to defendants' assertions, the narrative section of Cunningham's administrative complaint supports a finding that he raised a racial harassment claim. In describing how he was "treated . . . differently because of his race," Cunningham wrote that a coworker referred to him as "Black Kenny" and made "derogatory racial comments to him in front of a supervisor" who ignored such conduct. Doc. 39-3 at 133. These allegations could reasonably lead the responsible administrative agency to investigate whether Cunningham was discriminated against on the basis of race through harassment as well as discriminatory discharge. *See Cobb*, 850 F.2d at 359. Moreover, Cunningham's racial harassment claim alleges "incidents of discrimination" that are like or reasonably related to allegations made in his administrative complaint. *See Tart v. Hill Behan Lumber Co.*, 31 F.3d 668, 671 (8th Cir. 1994). Therefore, Cunningham did not fail to exhaust administrative remedies for his racial harassment claim.

The same cannot be said for Cunningham's retaliation claims. He made no allegations in his administrative complaint about suffering an adverse employment action because he complained about discrimination or otherwise engaged in a protected activity. Indeed, he concluded his narrative section by alleging race or disability discrimination because he was "singled out and terminated for allegedly stealing company time" while white employees who stole company time were treated more leniently, not that his employment was terminated as retaliation. Moreover, the law is clear that retaliation claims are not like, or reasonably related to, the discriminatory discharge and racial harassment claims Cunningham did raise. *See Paskert v. Kemna-ASA Auto Plaza, Inc.*, 950 F.3d 535, 539 (8th Cir. 2020), *cert. denied*, No. 20-27, 2020 WL 7132262 (U.S.

Dec. 7, 2020) ("Under our precedent, 'it is well established that retaliation claims are not reasonably related to underlying discrimination claims,' and therefore a retaliation claim must be distinctly and separately alleged." (quoting *Wallin v. Minn. Dep't of Corrs.*, 153 F.3d 681, 688–89 (8th Cir. 1998))); *see also McElroy*, 703 N.W.2d at 390 (relying on *Wallin* in finding that retaliation claim was not reasonably related to plaintiff's sexual harassment claim). Therefore, Cunningham failed to exhaust administrative remedies with regard to his retaliation claims.

To conclude, Cunningham's retaliation claims under the ICRA, and his retaliation and failure to accommodate claims under the ADA, must be dismissed for failure to exhaust administrative remedies. Because this conclusion disposes of all claims Cunningham brought pursuant to federal law, I must consider whether to retain or decline supplemental jurisdiction over the remaining state law claims (discriminatory discharge and harassment under the ICRA).

### B.     *The Remaining State Law Claims – Supplemental Jurisdiction*

A district court may decline to exercise supplemental jurisdiction when the court has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3). "A district court's decision whether to exercise that jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary." *Crest Const. II, Inc. v. Doe*, 660 F.3d 346, 359 (8th Cir. 2011) (quoting *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009)). While the determination of whether to retain jurisdiction over state-law claims pursuant to § 1367(c)(3) is a matter of discretion for a district court, "[i]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine— judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Barstad v. Murray County*, 420 F.3d 880, 888 (8th Cir. 2005) (quoting *Carnegie–Mellon University v. Cohill*, 484 U.S. 343, 350 n. 7 (1988)). Among other things, this reflects a policy that federal courts

11

should avoid addressing state law issues when possible. *Gregoire v. Class*, 236 F.3d 413, 419-20 (8th Cir. 2000).

Having considered the relevant factors, I find that this court should decline to exercise jurisdiction over the remaining state law claims. Thus, this case will be remanded to Iowa District Court for Dubuque County, where it originated.

## VI. CONCLUSION

For the foregoing reasons:

1. Defendants' motion (Doc. 39) for summary judgment is **granted** with regard to the retaliation claims under the ICRA (as asserted in Counts I and II) and with regard to both the retaliation claim and the failure to accommodate claim under the ADA (as asserted in Count III). Those claims are **dismissed with prejudice**.

2. Because this ruling disposes of all claims brought pursuant to federal law, and because I have concluded that this court should decline to exercise jurisdiction over the remaining state law claims, this action is hereby **remanded** to the Iowa District Court for Dubuque County.

3. The trial of this case in this court, currently scheduled to begin March 22, 2021, is hereby **canceled.**

**IT IS SO ORDERED.**

**DATED** this 8th day of January, 2021.

_____
Leonard T. Strand, Chief Judge